IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHAWN LEE,                              §
                                        §
            Plaintiff,                  §
                                        §
V.                                      §          No. 3:13-cv-1811-BN
                                        §
CAROLYN W. COLVIN,                      §
Acting Commissioner of Social Security, §
                                        §
            Defendant.                  §

## MEMORANDUM OPINION AND ORDER

Plaintiff Shawn Sang Lee seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed and remanded.

### Background

Plaintiff alleges that he is disabled due to a variety of ailments, including a breathing-related sleep disorder, left wrist tenosynovitis (arthritis), right wrist tenosynovitis (arthritis), cervical spine myofascial syndrome, lumbar spine myofascial syndrome, left knee patellofemoral syndrome, right knee patellofemoral syndrome, depression, fibromyalgia, and tinea versicolor. *See* Administrative Record [Dkt. Nos. 15 & 16] ("Tr.") at 142. After his application for disability benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *See id.* at 1, 10, 70-71. That hearing was held on January 11, 2013. *See id.* at 27-50. At the time of the hearing, Plaintiff was 44 years old. *See id.* at 30. He is a college graduate and has past work experience as a transportation supervisor and

automobile salesman. *See id.* at 32-34. Plaintiff has not engaged in substantial gainful activity since August 31, 2010. *See id.* at 30.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See id*. at 13. Although the medical evidence established that Plaintiff suffered from degenerative disc disease in the lumbar spine, a history of patellofemoral syndrome of the bilateral knees with limited extension, sleep disorder with mild obstructive sleep apnea, and major depressive disorder, *see id.* at 15-16, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations, *see id.* at 16-17. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of sedentary work, *see id.* at 17-20, but could not return to his past relevant employment, *see id.* at 20-21. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as a cutter/paster and an addresser – jobs that exist in significant numbers in the national economy. *See id.* at 21-22.

Plaintiff appealed that decision to the Appeals Council. *See id.* at 9. The Appeals Council affirmed. *See id.* at 1.

Plaintiff then filed this action in federal district court. *See* Dkt. No. 1. In a single ground for relief, Plaintiff contends that the ALJ improperly rejected the opinions of his treating physician. *See* Dkt. No. 22 at 9.

The Court determines that the hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

3

1.    The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.    The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.    The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.    If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.    If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007)

("In evaluating a disability claim, the Commissioner conducts a five-step sequential

analysis to determine whether (1) the claimant is presently working; (2) the claimant

has a severe impairment; (3) the impairment meets or equals an impairment listed in

appendix 1 of the social security regulations; (4) the impairment prevents the claimant

from doing past relevant work; and (5) the impairment prevents the claimant from

doing any other substantial gainful activity."). The claimant bears the initial burden

of establishing a disability through the first four steps of the analysis; on the fifth, the

burden shifts to the Commissioner to show that there is other substantial work in the

national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

5

that he could and would have adduced evidence that might have altered the result."
*Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

In a single issue, Plaintiff contends that the ALJ failed to adequately consider the opinion of his treating physician, Dr. Anthony C. Jung. Plaintiff asserts that the ALJ failed to provide good cause, supported by substantial evidence, for rejecting Dr. Jung's opinions, that the ALJ failed to analyze the six factors found in 20 C.F.R. § 404.1527(c) before rejecting Dr. Jung's opinions, and that Plaintiff was prejudiced by these errors.

On December 14, 2013, Dr. Jung completed a Physical Residual Functional Capacity Questionnaire in which he offered his opinion regarding the severity of and functional limitations caused by Plaintiff's impairments. *See* Tr. at 695-97. Dr. Jung opined that, during an eight-hour workday, Plaintiff could sit for five hours, stand or walk for one hour, and needed to lie down or recline for two hours due to the severity of his back pain. *See id.* at 695. Dr. Jung also noted that Plaintiff would need flexibility to change positions frequently. *See id.* Dr. Jung limited Plaintiff to lifting and carrying twenty pounds occasionally and up to ten pounds frequently due to back and neck pain. *See id.* at 696. Dr. Jung also restricted Plaintiff from repetitive action involving pushing or pulling with both hands. *See id.* Dr. Jung assessed Plaintiff's pain as moderate to severe, meaning that it would either cause a marked handicap in or preclude the performance of the activity precipitating pain, and opined that Plaintiff's pain would frequently interfere with attention and concentration. *See id.* at 696-97. Dr.

6

Jung also opined that Plaintiff would need frequent rest periods during the day, and that, as a result, Plaintiff would be an unreliable worker. *See id.* at 697.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work but that Plaintiff was limited to occasional stooping, balancing, and climbing of ramps and stairs and precluded from crouching, crawling, kneeling, or climbing ladders, ropes, and scaffolds. The ALJ also found that, due to psychologically based factors, Plaintiff has some limitations but is able to understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact with others, accept instructions, and respond to changes in a routine work setting. *See id.* at 17.

The ALJ gave Dr. Jung's opinion "some weight" because the ALJ determined that "only some of the restrictions were supported by objective medical evidence." *Id.* at 19-20. The ALJ found that Dr. Jung's opinions concerning Plaintiff's restrictions in sitting, standing/walking, and lifting were consistent with Plaintiff's lumbar pain, and, given the restrictions on standing/walking, the ALJ limited Plaintiff to sedentary work based, in part, on Dr. Jung's opinion. *See id.* at 19, 20. But the ALJ did not include any functional limitations regarding use of the hands in the RFC finding because he found there was no clinical evidence of weakness or limited range of motion in the bilateral hands and because x-rays of both hands and the right wrist were normal. *See id.* at 19. And the ALJ did not address Dr. Jung's opinions that Plaintiff would need flexibility to change positions frequently and frequent rest periods during the day, Plaintiff's attention and concentration would frequently be impaired due to pain, and Plaintiff

would be an unreliable worker. *See id.* at 19-20. The ALJ stated that he considered the opinion evidence in accordance with the requirements of and cited to 20 C.F.R. 404.1527, *see id.* at 17, but he did not expressly address the Section 404.1527(c)(2) factors in his decision, *see id.* at 14-23.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez*, 64 F.3d at 175-76 (citing 20 C.F.R. § 404.1527(c)(2)). And "[t]he opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). However, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Section 404.1527(c)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that

[the opinion] is not entitled to 'controlling weight.'" *Id.* at 456. Specifically, the ALJ must consider:

    (1) the physician's length of treatment of the claimant;

    (2) the physician's frequency of examination;

    (3) the nature and extent of the treatment relationship;

    (4) the support of the physician's opinion afforded by the medical evidence of record;

    (5) the consistency of the opinion with the record as a whole; and

    (6) the specialization of the treating physician.

20 C.F.R. § 404.1527(c)(2); *see also Newton*, 209 F.3d at 456. The ALJ must consider all six of the Section 404.1527(c)(2) factors if "controlling weight" is not given to a treating physician's medical opinions. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *McDonald v. Apfel*, No. 3:97-CV-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998).

In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. However, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing

opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

To make the RFC determination, the ALJ reviewed Dr. Jung's opinions as well as medical evidence concerning Plaintiff's back, knees, right wrist, and mental disorders, Plaintiff's activities of daily living, and the opinions of evaluating psychologists and the State agency medical consultant. *See* Tr. at 17-21. The ALJ first noted that Plaintiff was in the Army from 2003 to 2010 and had been granted veterans benefits based on a 70% disability rating for his physical and mental impairments. *See id.* at 18. The ALJ gave weight to the Veterans Administration ruling but explained that the Veterans Administration and Social Security Administration define disability differently. *See id.*

The ALJ concluded that there was a lack of objective medical evidence to substantiate Plaintiff's subjective complaints of pain. *See id.* In March 2012, a MRI of Plaintiff's lumbar spine showed a disc protrusion at L5-S1 indenting the thecal sac but with no significant narrowing, and a cervical spine x-ray showed that all disc spaces were maintained and well aligned. *See id.* at 18, 240-43. Plaintiff also had negative x-rays of the bilateral knees and right wrist. *See id.* at 18, 243-44, 479. Treating records noted that there were no arthritic changes seen on x-ray, examination of the bilateral wrist and hands yielded no significant clinical findings, and examination of the knees was unremarkable, with normal range of motion and no signs of redness, swelling, or palpable crepitus. *See id.* at 18, 407, 409, 542-44, 647.

The ALJ also concluded that Plaintiff's allegations of disability are inconsistent with his reported activities of daily living. *See id.* at 18. Plaintiff reported no significant limitations in activities of daily living in his Function Report. *See id.* at 18, 207-14. Treating notes indicated that Plaintiff's activities of daily living were intact and that he was able to attend to them independently with little difficulty. *See id.* at 18-19, 770-778. *But see id.* 542-43 ("activities of daily living are not limited, though they are difficult to accomplish").

Based on his review of Plaintiff's medical records, the ALJ found that Plaintiff appeared to be a fairly active individual, able to enjoy playing golf and going to the gym, as well as being able to take care of his elderly parents by driving them to doctor's appointments and running errands for them. *See id.* at 19, 208, 361, 371, 580.

The ALJ also concluded that Plaintiff's activities of daily living undermined allegations that he is incapable of sustaining the mental demands of regular, competitive work activity. *See id.* at 19. Treating records indicate that Plaintiff has a history of sleep disorder with mild obstructive sleep apnea and depression. *See id.* at 19, 376, 394-97. During a psychological examination in March 2011, Plaintiff reported symptoms of insomnia, diminished pleasure, fatigue, feelings of worthlessness/guilt, and poor concentration. He was treated with medications and regular behavioral therapy. *See id.* at 19, 348, 358, 373, 379-82, 633, 829. Plaintiff was found to meet the criteria for major depressive disorder in May 2012. *See id.* at 19, 549, 759. But the ALJ observed that Plaintiff reported enjoying several hobbies, such as playing golf, going to the gym, and going out socially with friends, and that, in the fall of 2012, Plaintiff

11

chose to return to school to pursue a graduate degree, which led to reduced therapy sessions. *See id.* at 19, 361, 371, 549, 759, 764. Based on this evidence, the ALJ concluded that Plaintiff's psychological symptoms were not disabling. *See id.* at 19.

The ALJ also considered the opinions of two clinical psychologists who evaluated Plaintiff in December 2012. *See id.* at 20, 769-78. Plaintiff's primary diagnosis was major depressive disorder, mainly as a result of current unemployment. *See id.* at 20, 769, 778. Plaintiff reported depressed mood with anxiety attacks one to two times a month and passive suicidal ideations once a week. *See id.* at 20, 773-74, 776. Despite his symptoms, Plaintiff's intellectual functioning was average and his activities of daily living were intact. *See id.* at 778. Overall, Plaintiff was expected to have mild to moderate occupational and social impairment with reduced reliability and productivity due to symptoms of poor motivation, difficulties with concentration and focus, irritability, and isolation from family. *See id.* at 20, 771, 778. Plaintiff's chronic pain symptoms would also affect his functioning. *See id.* at 778.

The ALJ observed that, while the psychologists opined that Plaintiff's major depressive disorder and sleep disorder rendered it difficult to secure work, they found only mild to moderate impairment in social and occupational functioning, and the ALJ considered their conclusion to be consistent with the treating evidence and Plaintiff's activities of daily living reflecting adequate adaptive living. *See id.* at 20. The ALJ therefore concluded that Plaintiff is capable of carrying out simple work in the course of regular, competitive work activity. *See id.*

The ALJ also considered the opinions of the State agency medical consultants who determined in May 2012 that Plaintiff could perform the exertional demands of light work, with frequent balancing, occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs and no climbing of ladders, ropes, and scaffolds. *See id.* at 20, 522-20. They also determined that Plaintiff is maximally able to understand, remember, and carry out detailed but not complex instructions, make basic decisions, attend and concentrate for extended periods, interact with others, accept instructions, and respond to changes in a routine work setting. *See id.* at 20, 530-33. Even though the ALJ gave this evidence some weight as the opinions of a non-examining source, the ALJ limited Plaintiff to sedentary work based on the opinion of Plaintiff's treating physician and in consideration of Plaintiff's back and knee problems. *See id.* at 20. The ALJ also limited Plaintiff to simple work because of the combined effect of Plaintiff's depression and chronic pain. *See id.*

The ALJ gave the treating physician's opinions some, but not controlling, weight because he concluded that only some of Dr. Jung's restrictions were supported by objective medical evidence. *See id.* at 19.

First, the ALJ found that Dr. Jung's opinions concerning Plaintiff's disabilities related to his back and knees to be consistent with his lumbar pain; the ALJ therefore limited Plaintiff to sedentary work with postural restrictions. *See id.* at 19-20. But, although the ALJ seemingly found Dr. Jung's limitations on Plaintiff's sitting, standing, and walking to be supported by objective medical evidence, Plaintiff argues

that those limitations are inconsistent with the ALJ's finding that Plaintiff could do sedentary work.

Second, the ALJ stated that he did not find a basis to assign restrictions in grasping or fine manipulation – but Dr. Jung did not recommend those restrictions. *See id.* 19, 696. Dr. Jung opined that Plaintiff's hand-related disorders would limit him in repetitive action involving pushing and pulling, but the ALJ found no clinical evidence of weakness or limited range of motion in the bilateral hands and noted that x-rays of both hands and the right wrist were normal. *See id.* at 19, 542-45. The ALJ therefore rejected Dr. Jung's opinion and did not include any functional limitations regarding use of the hands. *See id.* at 18.

Third, the ALJ did not expressly address Dr. Jung's opinions that Plaintiff needed the flexibility to change positions frequently, that Plaintiff's pain would frequently interfere with attention and concentration, that Plaintiff would need frequent rest periods during the day, and that, as a result of these frequent rest periods, Plaintiff would be an unreliable worker. *See id.* at 19-20, 695, 697. Plaintiff argues that the failure to do so was prejudicial because the vocational expert testified that the need to lie down or recline for two hours during the workday – a limitation assessed by Dr. Jung – would preclude the performance of competitive employment, as would the lifting, carrying, sitting, and standing limitations and concentration issues assessed by Dr. Jung. *See id.* at 47-48.

The Court acknowledges that the ALJ did recite, with no further elaboration, that he considered "all symptoms and the extent to which these symptoms can

14

reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR § 404.1529 and SSRs 96-4p and 96-7p," and that he "also considered opinion evidence in accordance with the requirements of 20 CFR § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." *Id.* at 19. But this statement, on its own, is not sufficient to satisfy *Newton*'s standards. The ALJ did not find that Dr. Jung's findings, as the treating physician, were brief, conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence in way other than the lack of clinical evidence concerning hand limitations. *See Newton,* 209 F.3d at 456; *see also Greenspan,* 38 F.3d at 237. To the extent the ALJ may have found that Dr. Jung's opinions were inconsistent with other <u>evidence</u> in the record – rather than inconsistent with the conclusions of other experts – those alleged inconsistencies seem to rely on Plaintiff's activities of daily living or the State agency medical consultants' opinions. *See* Tr. at 17-20.

Courts in this district do not always require the ALJ to discuss each of the Section 404.1527(c)(1) factors if it is clear that the ALJ has nevertheless considered the factors and the ALJ's decision to give no weight to the treating physician constitutes "good cause." *Brock v. Astrue*, No. 3:10-cv-1399-BD, 2011 WL 4348305, at *4 (N.D. Tex. Sept. 16, 2011).

But, in this case, the ALJ did not provide "good cause" for rejecting Dr. Jung's opinion, which was supported by the medical record and which the ALJ partially cited but eventually rejected without explanation. "Good cause does not exist when the ALJ

has not considered all relevant evidence of record." *Bragg v. Comm'r of Soc. Sec. Admin.*, 567 F. Supp. 2d 893, 911 (N.D. Tex. 2008).

The Court notes that the evidence in the record may well support a finding that Plaintiff is not disabled. But "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455. "Reviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." *Bragg*, 567 F. Supp. 2d at 907.

The ALJ's failure to consider the Section 404.1527 factors when rejecting Dr. Jung's opinions was prejudicial error. It is the ALJ's responsibility to weigh the evidence, and the Court is unable to say what the ALJ would have done had he weighed all relevant evidence of record. The opinions expressed by Dr. Jung included significant limitations beyond those that the ALJ recognized in determining both Plaintiff's residual functional capacity and his ability to engage in any form of substantial gainful activity. Had the ALJ given proper consideration to the treating physician's records and assessment of Plaintiff's ability to engage in work-related activities, the ALJ might have reached a different decision as to disability.

This is especially true in light of the fact that the burden lies with the Commissioner at Step 5 to identify gainful employment available in the national economy that the claimant is capable of performing. *See Greenspan*, 38 F.3d at 236; see also *Myers*, 238 F.3d at 621-22 (holding that remand was required when the ALJ failed to consider all evidence from a treating source and failed to present good cause for rejecting it); *Newton*, 238 F.3d at 621-22 (holding that remand was required when the

16

ALJ failed to consider each of the Section 404.1527 factors before declining to give weight to the opinions of the claimant's treating specialist); *Harris v. Astrue*, No. 3:11-cv-1089-M-BH, 2012 WL 4442303, at *15 (N.D. Tex. Sept. 7, 2012), *rec. adopted*, 2012 WL 4458405 (N.D. Tex. Sept. 26, 2012).

The ALJ's failure to consider the Section 404.1527 factors in connection with Dr. Jung's opinion was prejudicial error, and this matter must be reversed and remanded.

## Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

DATED: April 23, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

17